SCOTT L. FROST, ESQ., CA Bar No. 258063
scott@frostlawfirm.com
ANDREW SEITZ, ESQ., CA Bar No. 273165
andrew@frostlawfirm.com
**FROST LAW FIRM, PC**
273 West 7th Street
San Pedro, CA 90731
Tel.: (866) FLF-MESO
Fax: (833) FLF-MESO

and

JOHN M. CARON, ESQ., CA Bar No. 130633
**THE LAW OFFICES OF WORTHINGTON & CARON, PC**
273 W. 7th Street
San Pedro, CA 90731
Tel.:(310) 221-8090
Fax: (310) 221-8095

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| **GRANT COCHRAN,** *individually and as successor-in-interest to Decedent DEFORD COCHRAN***, and CHARLENE COCHRAN, BRENT COCHRAN, CHRISTOPHER COCHRAN, DANIEL COCHRAN, EVAN COCHRAN, FLYNN COCHRAN,** and **HEATHER RODRIGUEZ**, *individually*, <br><br> Plaintiffs, <br><br> vs. <br><br> **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually* | Case No. <br><br> **PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH** <br><br> 1. **NEGLIGENCE (MARITIME)** <br><br> 2. **NEGLIGENCE (CALIFORNIA)** <br><br> 3. **BREACH OF EXPRESS AND IMPLIED WARRANTIES** <br><br> 4. **STRICT LIABILITY (MARITIME)** |

1

and as *successor-in-interest to*
BUFFALO PUMPS, INC.);
**CRANE CO.** (*sued individually and as*
*successor-in-interest to* CHAPMAN
VALVE CO.);
**GENERAL ELECTRIC COMPANY**;
**IMO INDUSTRIES, INC.** (*sued*
*individually and as successor-in-*
*interest to* DELAVAL STEAM
TURBINE COMPANY);
**ITT INDUSTRIES, INC.** (*sued*
*individually and as successor-in-*
*interest to* FOSTER ENGINEERING
COMPANY *and* BELL & GOSSETT);
**LOCKHEED MARTIN**
**CORPORATION**;
**NOKIA NETWORKS INC.** (*sued*
*individually and as successor-in-*
*interest to* WESTERN ELECTRIC
COMPANY INCORPORATED *and*
WESTERN ELECTRIC
MANUFACTURING COMPANY);
**RAYTHEON TECHNOLOGIES**
**CORPORATION**;
**VIACOMCBS INC.** *f/k/a* CBS
CORPORATION *f/k/a* VIACOM INC.,
*successor-by-merger to* CBS
CORPORATION *f/k/a*
WESTINGHOUSE ELECTRIC
CORPORATION;
**WARREN PUMPS LLC**;
and **DOES 1 THROUGH 400**
INCLUSIVE, et al.

                    Defendants.

5. **STRICT LIABLITY**
   **(CALIFORNIA)**

6. **LOSS OF CONSORTIUM**

**DEMAND FOR JURY TRIAL**

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

## I.   PARTIES

1.     Decedent in this action, DEFORD COCHRAN, has sustained asbestos-related lung injuries, eventually leading to his death, as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2.     Decedent DEFORD COCHRAN sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites.

3.     The pathogenesis of Decedent DEFORD COCHRAN's asbestos-related diseases is explained on Exhibit B, attached to Plaintiffs' complaint and incorporated by reference herein.

4.     Plaintiff CHARLENE COCHRAN is Decedent's surviving spouse. Plaintiffs BRENT COCHRAN, CHRISTOPHER COCHRAN, DANIEL COCHRAN, EVAN COCHRAN, FLYNN COCHRAN, GRANT COCHRAN, and HEATHER RODRIGUEZ are Decedent's children.

5.     All of Plaintiffs' claims arise out of Decedent's repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants; and supplied to, installed, and/or maintained by defendants at Decedent DEFORD COCHRAN's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent DEFORD COCHRAN, resulting in cumulative, progressive, and incurable lung diseases, finally resulting in his death.

6.     Plaintiffs claims damages for Decedent DEFORD COCHRAN's asbestos-related disease arising from a series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease and death.

7.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-in-interest to* BUFFALO PUMPS, INC.); **CRANE CO.**

(*sued individually and as successor-in-interest to* CHAPMAN VALVE CO.); **GENERAL ELECTRIC COMPANY**; **IMO INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY); **ITT INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* FOSTER ENGINEERING COMPANY *and* BELL & GOSSETT); **LOCKHEED MARTIN CORPORATION**; **NOKIA NETWORKS INC.** (*sued individually and as successor-in-interest to* WESTERN ELECTRIC COMPANY INCORPORATED *and* WESTERN ELECTRIC MANUFACTURING COMPANY); **RAYTHEON TECHNOLOGIES CORPORATION**; **VIACOMCBS INC.** *f/k/a* CBS CORPORATION *f/k/a* VIACOM INC., *successor-by-merger to* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION; **WARREN PUMPS LLC**; and **DOES 1 THROUGH 400,** were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

## II.   JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8.    <u>Jurisdiction</u>: Plaintiffs are citizens of the following States:

| PLAINTIFF | STATE |
|-----------|-------|
| Charlene Cochran | Colorado |
| Brent Cochran | Washington |
| Christopher Cochran | California |
| Daniel Cochran | Washington |
| Evan Cochran | Washington |
| Flynn Cochran | Virginia |
| Grant Cochran | Washington |
| Heather Rodriguez | Colorado |

9. Defendant and each corporation are incorporated under the laws of and having their principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-by merger to* BUFFALO PUMPS, INC.); | Pennsylvania |
| **CRANE CO.** (*sued individually and as successor-in-interest to* CHAPMAN VALVE COMPANY) | Delaware; Connecticut |
| **GENERAL ELECTRIC COMPANY** | New York; Massachusetts |
| **IMO INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY *and* DELAVAL, INC.) | Delaware; New Jersey |
| **ITT INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* FOSTER ENGINEERING COMPANY *and* BELL & GOSSETT) | Delaware; New York |
| **LOCKHEED MARTIN CORPORATION** | Maryland |
| **NOKIA NETWORKS INC.** (*sued individually and as successor-in-interest to* WESTERN ELECTRIC COMPANY INCORPORATED *and* WESTERN ELECTRIC MANUFACTURING COMPANY) | Delaware |
| **RAYTHEON TECHNOLOGIES CORPORATION** | Delaware; Massachusetts |
| **VIACOMCBS INC.** *f/k/a* CBS CORPORATION *f/k/a* VIACOM INC., *successor-by-merger to* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION | Delaware; New York |

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

| WARREN PUMPS, LLC (*sued individually and as successor-in-interest to* QUIMBY PUMP COMPANY, INC.); | Delaware; Massachusetts |
|---|---|

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

10. At least a portion of this case is of Admiralty and Maritime Jurisdiction and is a claim within the meaning of F.R.C.P. 9(h). The locations of some of Decedent DEFORD COCHRAN's exposures were on navigable waters, and his exposure occurred in connection with traditional maritime activity, as specified in "Exhibit A."

11. <u>Venue / Intradistrict Assignment</u>: Venue is proper in the Central District of California and assignment to the Los Angeles Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of Los Angeles, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## <u>FIRST CAUSE OF ACTION</u>
## NEGLIGENCE (MARITIME LAW)

PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE UNDER MARITIME LAW ALLEGES:

12. At all times herein mentioned, the named defendants, and each of them, was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing,

authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, failed to retrofit, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY.

13.     At all times herein mentioned, Defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing,

installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

14.     At all times herein mentioned, Defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, failed to retrofit, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons."

15.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

16.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing,

maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through re-entrainment.

17.     Decedent DEFORD COCHRAN has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in Exhibit A, attached to Plaintiffs' complaint and incorporated by reference herein.

18.     As a direct and proximate result of the acts, omissions, and conduct of the Defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in Exhibit B, attached to Plaintiffs' complaint and incorporated by reference herein.

19.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

20.     Decedent DEFORD COCHRAN suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

21.     As a direct and proximate result of the aforesaid conduct of Defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered permanent injuries; including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Decedent's general damage.

22.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

23.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Decedent and Plaintiffs have incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this complaint to conform to proof at the time of trial.

24.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

25.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

26.     The herein-described conduct of Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof against each Defendant.

WHEREFORE, Plaintiff prays judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

## SECOND CAUSE OF ACTION

### NEGLIGENCE (CALIFORNIA LAW)

PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE UNDER CALIFORNIA LAW ALLEGES:

27.    At all times herein mentioned, the named defendants, and each of them, was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, failed to retrofit, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY.

28.    At all times herein mentioned, Defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

29.    At all times herein mentioned, Defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, failed to retrofit, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably

foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons."

30.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

31.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through re-entrainment.

32.     Decedent DEFORD COCHRAN has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in Exhibit A, attached to Plaintiffs' complaint and incorporated by reference herein.

33.     As a direct and proximate result of the acts, omissions, and conduct of the Defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in Exhibit B, attached to Plaintiffs' complaint and incorporated by reference herein.

34.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

35.     Decedent DEFORD COCHRAN suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

36.     As a direct and proximate result of the aforesaid conduct of Defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered increased risk of injuries to his person, body, and health; including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Decedent's general damage.

37.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

38.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Decedent and Plaintiffs have incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this complaint to conform to proof at the time of trial.

39.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

40.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

41.     The herein-described conduct of Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof against each Defendant.

WHEREFORE, Plaintiff prays judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### BREACH OF EXPRESS AND IMPLIED WARRANTIES

PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES:

42.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action herein.

43.     Defendants and DOES 1 through 400, and each of them, inclusive, sold and/or otherwise supplied the asbestos containing products, materials, and equipment to Decedent DEFORD COCHRAN and/or his employers.

44.     That in connection with the manufacture, preparation, sale, specification, installation, use, and supply of asbestos products, Defendants, and each of them, expressly and impliedly warranted that said products were of good and merchantable quality and fit for their intended use. However, in truth and in fact, said products contained harmful and

deleterious asbestos fibers, known to the defendants herein, to be defective and harmful to humans exposed thereto.

45.    Said products were not and are not suitable for the purposes for which said products were intended, supplied, and relied upon, nor suitable for any other similar purpose, including their use by human beings in confined spaces where humans would be physically present, working, resting, or breathing.

46.    Decedent DEFORD COCHRAN relied on the express and implied warranties of Defendants, and each of them, in the use of and exposure to said asbestos and asbestos products, and Decedent DEFORD COCHRAN was using and/or exposed to said asbestos in a reasonably foreseeable intended manner.

47.    Defendants, and each of them, breached the above-described express and implied warranties in that said substance was defective, which defects permitted and/or caused said substance to seriously and permanently cause injury to Decedent while using said substance in a manner that was reasonably foreseeable.

48.    The breaches of warranties by the Defendants, and each of them, as described in this cause of action was a substantial factor and a legal cause of the injuries and damages sustained by Plaintiffs.

49.    As a direct and proximate result of the above-described breaches of warranties by said Defendants, and each of them, Decedent DEFORD COCHRAN suffered severe and permanent injuries to his person, and Decedent and Plaintiffs suffered damages as alleged above.

50.    In particular, Plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Defendants, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing his disease and injuries. As the above referenced conduct complained of in this complaint of said Defendants, and each of them, and their officers,

directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, and outrageous; and said Defendants, and each of them, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent DEFORD COCHRAN and of workers exposed to asbestos and asbestos products, such that, Plaintiffs, for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

## FOURTH CAUSE OF ACTION
### STRICT LIABILITY IN TORT (MARITIME LAW)

PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT LIABILITY IN TORT:

51.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, and Third Causes of Action herein.

52.     At all times mentioned herein, the Defendants, and each of them, manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished, contracted for installation, contracted others to install, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers, and that asbestos and/or products containing asbestos and/or products which created an asbestos hazard and/or safety equipment intended to block the entry of asbestos fibers were defective in that they were not as safe as an ordinary consumer of such products would expect; and that the gravity of the potential harm resulting from the use of the defective products of the Defendants, and each of them, and the risk of said asbestos and asbestos-containing products

outweighed any benefit of the said Defendants' design, when safer alternative designs and materials existed and were available that could and should have been substituted and used instead of the deadly asbestos, including providing adequate warning of such potential harm.

53.    At all times mentioned herein, the Defendants, and each of them, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner.

54.    The Defendants, and each of them, placed said asbestos products on the market, knowing the asbestos-containing products would be used without inspection for such defects and unsafe conditions, and that said Defendants nonetheless took no action to warn or otherwise protect "exposed persons," including Decedent DEFORD COCHRAN, who foreseeably would be exposed to these defective and inadequately labeled asbestos and asbestos-containing products.

55.    The asbestos and asbestos-containing products, components, and assemblies of the Defendants, and each of them, were substantially the same as when they left said Defendants' possession.

56.    The aforementioned asbestos and asbestos-containing products of the Defendants, and each of them, were used by Decedent and "exposed persons" in the manner for which they were intended or in a manner that was or would be reasonably foreseeable, and Decedent DEFORD COCHRAN was exposed to said asbestos and asbestos-containing products in a manner foreseeable to said defendants.

57.    The dangers inherent in breathing asbestos-containing dust and the dangers inherent in asbestos-containing products, components, and assemblies were unknown and unforeseeable to Decedent DEFORD COCHRAN, and Decedent had not been advised or informed by anyone that he could contract any disease, sickness, or injury as a result of working in the vicinity of asbestos.

58.    The failure to warn by Defendants, and the product defect in the asbestos and asbestos-containing products of Defendants, and each of them, were substantial factors

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

and a legal cause of Decedent DEFORD COCHRAN's injuries and damages thereby sustained by Decedent and Plaintiffs, and that said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent DEFORD COCHRAN, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

59. As a direct and proximate result of the aforesaid conduct of said Defendants, and each of them, Decedent DEFORD COCHRAN suffered severe and permanent injuries to his person, and Decedent and Plaintiffs suffered damages as alleged above.

60. In particular, Plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Defendants, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing his disease and injuries. As the above referenced conduct complained of in this complaint of said Defendants, and each of them, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, and outrageous, and said Defendants, and each of them, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent DEFORD COCHRAN and of workers exposed to asbestos and asbestos products, such that, plaintiff, for the sake of example, and by way of punishing said defendants, seek punitive damages according to proof.

///

///

## FIFTH CAUSE OF ACTION

### STRICT LIABILITY IN TORT (CALIFORNIA LAW)

PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT LIABILITY IN TORT:

61.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Third, and Fourth Causes of Action herein.

62.     At all times mentioned herein, the Defendants, and each of them, manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished, contracted for installation, contracted others to install, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers, and that asbestos and/or products containing asbestos and/or products which created an asbestos hazard and/or safety equipment intended to block the entry of asbestos fibers were defective in that they were not as safe as an ordinary consumer of such products would expect; and that the gravity of the potential harm resulting from the use of the defective products of the Defendants, and each of them, and the risk of said asbestos and asbestos-containing products outweighed any benefit of the said Defendants' design, when safer alternative designs and materials existed and were available that could and should have been substituted and used instead of the deadly asbestos, including providing adequate warning of such potential harm.

63.     At all times mentioned herein, the Defendants, and each of them, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner.

64.     The Defendants, and each of them, placed said asbestos products on the market, knowing the asbestos-containing products would be used without inspection for such defects and unsafe conditions, and that said Defendants nonetheless took no action to warn or otherwise protect "exposed persons," including Decedent DEFORD COCHRAN, who foreseeably would be exposed to these defective and inadequately labeled asbestos and asbestos-containing products.

65.     The asbestos and asbestos-containing products, components, and assemblies of the Defendants, and each of them, were substantially the same as when they left said Defendants' possession.

66.     The aforementioned asbestos and asbestos-containing products of the Defendants, and each of them, were used by Decedent and "exposed persons" in the manner for which they were intended or in a manner that was or would be reasonably foreseeable, and Decedent DEFORD COCHRAN was exposed to said asbestos and asbestos-containing products in a manner foreseeable to said defendants.

67.     The dangers inherent in breathing asbestos-containing dust and the dangers inherent in asbestos-containing products, components, and assemblies were unknown and unforeseeable to Decedent DEFORD COCHRAN, and Decedent had not been advised or informed by anyone that he could contract any disease, sickness, or injury as a result of working in the vicinity of asbestos.

68.     The failure to warn by Defendants, and the product defect in the asbestos and asbestos-containing products of Defendants, and each of them, were substantial factors and a legal cause of Decedent DEFORD COCHRAN's injuries and damages thereby sustained by Decedent and Plaintiffs, and that said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent DEFORD COCHRAN, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

69.     As a direct and proximate result of the aforesaid conduct of said Defendants, and each of them, Decedent DEFORD COCHRAN suffered severe and permanent injuries to his person, and Decedent and Plaintiffs suffered damages as alleged above.

70.     In particular, Plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Defendants, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing his disease and injuries. As the above referenced conduct complained of in this complaint of said Defendants, and each of them, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, and outrageous, and said Defendants, and each of them, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent DEFORD COCHRAN and of workers exposed to asbestos and asbestos products, such that, plaintiff, for the sake of example, and by way of punishing said defendants, seek punitive damages according to proof.

### SIXTH CAUSE OF ACTION

**LOSS OF CONSORTIUM**

PLAINTIFF CHARLENE COCHRAN COMPLAINS OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR LOSS OF CONSORTIUM:

71.     Plaintiff CHARLENE COCHRAN hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Third, Fourth, and Fifth Causes of Action herein.

72.     Decedent DEFORD COCHRAN and Plaintiff CHARLENE COCHRAN were married at the time of Decedent's diagnosis, and up to and including the date of his death had been husband and wife.

73.     Prior to Decedent DEFORD COCHRAN's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Decedent DEFORD COCHRAN was unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work , service, and duties in the future. As a proximate result thereof, Plaintiff CHARLENE COCHRAN has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

74.     Plaintiff CHARLENE COCHRAN's discovery of this cause of her loss of consortium, as herein alleged, first occurred within two years of the date this Complaint was filed.

75.     As a direct and proximate result of the acts of Defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Decedent DEFORD COCHRAN, as set forth in this complaint, Plaintiff CHARLENE COCHRAN has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited to, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray judgment against Defendants, Does 1-400, their "alternate entities," and each of them, inclusive, as follows:

1.     For general damages according to proof;

2.     For special damages according to proof;

3.     For Decedent's pain and suffering, according to proof;

4.     For medical and related expenses according to proof;

5.   For loss of income, earning capacity, earning potential according to proof;

6.   For Plaintiffs' damages for loss of love, companionship, comfort, affection, solace, moral support, and/or society according to proof

7.   For exemplary or punitive damages according to proof;

8.   For costs of suit herein;

9.   For prejudgment interest on all damages as allowed by laws; and

10.  For such other and further relief as the Court deems just and proper.

DATED: December 10, 2021                    FROST LAW FIRM, PC


By:___/s/ Andrew Seitz_____
ANDREW SEITZ
Attorneys for Plaintiffs

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

# <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs also by this pleading demand a jury trial on all issues set forth hereinabove and as shall or might arise pursuant to the same.

DATED: December 10, 2021                    FROST LAW FIRM, PC


By: <u>   */s/ Andrew Seitz*              </u>
ANDREW SEITZ
Attorneys for Plaintiffs

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

## EXHIBIT "A"

Decedent DEFORD COCHRAN's exposure to asbestos and asbestos-containing products occurred at various locations within the states of California, Hawaii, and Washington, including, but not limited to:

| Location of Exposures | Job Title | Exposure Dates (Approximate) |
|---|---|---|
| USS Lynde McCormick (DDG-8)<br><br>Long Beach Naval Shipyard Long Beach, California<br><br>San Diego Naval Base San Diego, California | Surface Warfare Officer | 1967 to 1970 |
| USS Somers (DD-947 / DDG-34)<br><br>Long Beach Naval Shipyard Long Beach, California<br><br>Naval Station Pearl Harbor Pearl Harbor, Hawaii | Surface Warfare Officer | 1972 to 1975 |
| USS Worden (CG-18)<br><br>Naval Station Pearl Harbor Pearl Harbor, Hawaii | Surface Warfare Officer | 1980 to 1983 |

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH

EXHIBIT "B"

Decedent DEFORD COCHRAN's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Decedent including, but not limited to, breathing difficulties, asbestosis, mesothelioma, lung and/or other cancer, and/or lung damage. Decedent DEFORD COCHRAN was diagnosed with malignant mesothelioma on or about December 2020.

Decedent DEFORD COCHRAN was retired at the time he was diagnosed with malignant mesothelioma.

Decedent DEFORD COCHRAN died as a result of his asbestos-related injuries on December 10, 2020.

PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH