O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT COCHRAN, et al.,<br><br>      Plaintiffs,<br>  v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>      Defendants. | Case No.: 2:21-cv-09612-MEMF (PDx)<br><br>**ORDER GRANTING DEFENDANT LOCKHEED MARTIN CORPORATION'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 94-5] AND MOTION TO DISMISS COMPLAINT WITHOUT LEAVE TO AMEND [ECF NO. 94]** |

  Before the Court is the Motion to Dismiss and Request for Judicial Notice filed by Defendant Lockheed Martin Corporation. ECF Nos. 94-1; 94-5. For the reasons stated herein, the Court GRANTS the Request for Judicial Notice. The Court also GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

/ / /

/ / /

# BACKGROUND

I. Factual Background

    a. **Decedent DeFord Cochran's asbestos exposure and death from mesothelioma[1]**

Decedent DeFord Cochran ("Cochran") served in the United States Navy between 1967 and 1983. SAC ¶¶ 1–2; SAC, Ex. A; Joint Rule 26(f) Report, ECF No. 59 ("26(f) Report") at 2. During his service, Cochran was exposed to asbestos due to his work on or around shipboard radar equipment—specifically the AN/SPS-40 radar system (the "System" or "Radar System").[2] Declaration of Deborah Parker ("Parker Decl."), ECF No. 94-2 ¶ 3. Cochran's exposure is specifically linked to his work in California, Hawaii, and Washington while aboard various Navy ships in the 1960s, 1970s, and 1980s. SAC, Ex. A. Cochran eventually developed mesothelioma; a rare form of cancer most often caused by asbestos exposure.[3] *Id.* ¶¶ 1–2; *id.*, Ex. B. Cochran passed away from mesothelioma on December 10, 2020. *Id.* ¶¶ 1–2; *id.*, Ex. B.

    b. **Defendant Lockheed Martin Corporation's headquarters and principal place of business is in the State of Maryland.[4]**

Defendant Lockheed Martin Corporation ("Lockheed Martin") is the successor-in-interest to Lockheed Electronics Company ("Lockheed Electronics") and Lockheed Aircraft Corporation ("Lockheed Aircraft") (collectively, the "Predecessors"). Motion to Dismiss, ECF No. 94 ("Motion" or "Mot.") at 2.

Lockheed Martin was originally known as Stavid Engineering ("Stavid"), a New Jersey-based corporation. Mot. at 2; Jimenez Decl. ¶ 10. In the 1950s, Stavid entered a contract with the

---

[1] Unless otherwise indicated, the factual allegations set forth in this section are taken from the Second Amended Complaint. ECF No. 87 ("SAC").
[2] The AN/SPS-40 radar system is "a long-range, high-powered, two-dimensional, surface and air search radar that was used aboard some Naval ships for detection of targets at long and medium ranges." Declaration of Valentino Jimenez, ECF No. 94-3 ("Jimenez Decl.") ¶ 7.
[3] *See* Mesothelioma, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/mesothelioma/symptoms-causes/syc-20375022 (last accessed Sept. 26, 2022).
[4] The facts set forth below are taken from the Motion to Dismiss (ECF No. 94) and Lockheed Martin's allegations in the declarations attached to said Motion. Jimenez Decl.; Declaration of Dana L. Bennett, ECF No. 94-4 ("Bennett Decl.").

1  United States Military ("Military") to design and manufacture the System. Jimenez Decl. ¶¶ 10, 13–
2  14, 17–23. All activities related to the design, manufacture, and marketing of the System took place
3  in New Jersey. *Id.* ¶¶ 17–18.
4        In 1959, Stavid incorporated under Delaware law and changed its name to "Lockheed
5  Electronics Company." Mot. at 2; Request for Judicial Notice, ECF No. 94-5 ("RJN"), Exs. 1, 2. At
6  the time, Lockheed Electronics was an entity separate from Lockheed Aircraft, which maintained its
7  facilities in Burbank, California. Jimenez Decl. ¶ 18. Lockheed Aircraft solely "manufactured,
8  assembled, and produced aircraft at their California facilities," while Lockheed Electronics
9  manufactured, in relevant part, radar systems for use aboard ships. *Id.* Lockheed Electronics and
10 Lockheed Aircraft merged in 1961. RJN, Ex. 4.
11       Lockheed Martin was formed in 1995. It has been headquartered in Bethesda, Maryland since its
12 inception. Bennet Decl. ¶ 4.
13     **II.**    **Procedural History**
14       On December 10, 2021, Plaintiffs Grant Cochran, individually and as successor-in-interest to
15 Decedent DeFord Cochran, Charlene Cochran, Brent Cochran, Christopher Cochran, Daniel
16 Cochran, Evan Cochran, Flynn Cochran, and Heather Rodriguez, individually (collectively, "the
17 Cochrans") filed the present action against the following defendants: Air & Liquid Systems
18 Corporation, individually and as successor-in-interest to Buffalo Pumps, Inc.; General Electric
19 Company; IMO Industries, Inc., individually and as successor-in-interest to Delaval Steam Turbine
20 Company; ITT Industries, Inc., individually and as successor-in-interest to Foster Engineering
21 Company and Bell & Gossett; Lockheed Martin Corporation; Microsoft Mobile Inc., f/k/a Nokia
22 Inc., successor-in-interest to Nokia Networks Inc., successor-in-interest to Western Electric
23 Company Incorporated and Western Electric Manufacturing Company; Paramount Global, f/k/a
24 ViacomCBS, Inc., f/k/a CBS Corporation, f/k/a Viacom, Inc., successor-by-merger to CBS
25 Corporation, f/k/a Westinghouse Electric Corporation; Raytheon Company; Redco Corporation,
26 f/k/a Crane Co., individually and as successor-in-interest to Chapman Valve Co.; Warren Pumps
27 LLC; and Does 1 through 400. ECF No. 1. On August 24, 2022, the Cochrans filed their Second
28 Amended Complaint, alleging the following six claims: (1) negligence pursuant to maritime law; (2)

negligence pursuant to California common law; (3) breach of express and implied warranties; (4) strict liability pursuant to maritime law; (5) strict liability pursuant to California common law; and (6) loss of consortium. *See generally* SAC. The Cochrans seek the following forms of relief: general and special damages based on DeFord Cochran's pain and suffering, medical costs, loss of income, earning capacity, and earning potential; damages based on loss of consortium; exemplary or punitive damages; costs of suit; and prejudgment interest. *See generally* Prayer, SAC. On September 7, 2022, Lockheed Martin filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and accompanying Request for Judicial Notice. *See* Motion; RJN. The Motion was fully briefed on September 22, 2022. *See* ECF Nos. 98 ("Opposition" or "Opp'n"), 99 ("Reply"). The Court heard oral argument on October 6, 2022 ("October 6 Hearing").

## REQUEST FOR JUDICIAL NOTICE

### I. Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). The Ninth Circuit has recognized public records as appropriate for judicial notice. *See, e.g.*, *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

### II. Discussion

Lockheed Martin submits—and requests that the Court take notice of— the following four (4) exhibits:

1. **Exhibit 1:** "Certified Copy of Certificate of Incorporation of Stavid Engineering, Inc., filed with the Delaware Secretary of State on or about August 27, 1959, and available from the Delaware Secretary of State."

2. **Exhibit 2:** "Certified Copy of Certificate of Amendment of Stavid Engineering, Inc., changing its name to "Lockheed Electronics Company," filed with the Delaware Secretary of State on or about December 21, 1959, and available from the Delaware Secretary of State."

3. **Exhibit 3:** "Certified Copy of Certificate of Amendment of Certificate of Incorporation of Lockheed Electronics Company, filed with the Delaware Secretary of State on or about February 2, 1960, and available from the Delaware Secretary of State."

4. **Exhibit 4:** "Certified Copy of Certificate of Merger of Lockheed Electronics Company into Lockheed Aircraft Corporation, filed with the Delaware Secretary of State on or about August 29, 1961, and available from the Delaware Secretary of State."

RJN at 1–2.

Each of the submitted exhibits are public records on file with the Delaware Secretary of State. As such, the Court finds that the foregoing exhibits are not subject to reasonable dispute and, thus, fall squarely into the category of documents appropriate for judicial notice. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies" (quotation marks omitted)).[5] Accordingly, the Court GRANTS Lockheed Martin's RJN and takes notice of Exhibits 1–4.

/ / /

/ / /

---

[5] Courts routinely take judicial notice of records on file with a state's Secretary of State and/or results generated from a state Secretary of State Business Search. *See, e.g.*, *Sec. & Exch. Comm'n v. Plaza Home Mortg., Inc.*, No. EDCV18CV00866VAPFFMX, 2018 WL 4207543, at *2 (C.D. Cal. Aug. 31, 2018) ("The Court may also take judicial notice of the results from the California Secretary of State Business search."); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); *Khoury Invs., Inc. v. Nationwide Mut. Ins. Co.*, Case No. CV 13-05415-MWF (Ex), 2013 WL 12140449, at *2 (C.D. Cal. Sept. 16, 2013).

# MOTION TO DISMISS

## I. Applicable Law

Under Federal Rule of Civil Procedure 12(b)(2), a party may file a motion to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). In the face of a 12(b)(2) motion, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716, 741 (9th Cir. 2013). In determining whether a complaint lacks personal jurisdiction, a court may consider evidence presented in affidavits and may order discovery on the jurisdictional issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds as discussed in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"However, 'when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Under such circumstances, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). Although the court may not assume the truth of allegations in a pleading which are contradicted by affidavit, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Unocal*, 248 F.3d at 922.

Moreover, when no applicable federal statute governing personal jurisdiction exists, as is the case here, the district court applies the law of the state in which the district court sits. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746,753 (2014)). Accordingly, the Court looks to "California's long-arm statute [which] allows the exercise personal jurisdiction to the full extent permissible under [the Due Process Clause of the United States Constitution]." *Picot*, 780 F.3d at 1211 (quoting *Daimler*, 134 S.Ct. at 753); *see also* CAL. CIV. PROC. CODE § 410.10.

Due process allows courts to exercise jurisdiction only over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be either general or specific. *See Picot*, 780 F.3d at 1211; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984).

A district court should generally grant leave to amend freely. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.*

### A. General Jurisdiction

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. at 414–16), *modified*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). The Ninth Circuit has recognized this as "an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (noting that the standard for establishing general jurisdiction is "fairly high" and requires contacts "that approximate physical presence").

### B. Specific Jurisdiction

"Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer 'general jurisdiction,' a court may exercise 'specific jurisdiction.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Specific jurisdiction exists where the claim for relief arises directly from a defendant's contacts with the forum state. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

/ / /

For a court to exercise specific jurisdiction over a defendant:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211.

The plaintiff bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff is able to do so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair under the third prong. *Id.*

### 1. Purposeful direction or availment

"[W]here . . . a case sounds in tort," the court is directed to "employ the purposeful direction test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). In tort cases, the Ninth Circuit requires a showing of purposeful direction, rather than purposeful availment. *Mavrix Photo*, 647 F.3d at 1228. Purposeful direction is analyzed under the *Calder* "effects" test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). When, however, a case sounds in contract, the court must apply the purposeful availment test. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, 972 F.3d 1101, 1107 (9th Cir. 2020) ("Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort."). Although both tests are relevant when "both contract and tort claims are at issue," *id.* (citing *Picot*, 780 F.3d at 1212), each test hinges on the same question: "whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *Glob. Commodities Trading Grp.*, 972 F.3d at 1107 (quotation marks omitted).

/ / /

### III. Discussion

Lockheed Martin argues that the SAC should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because the Cochrans cannot establish that the Court has: (1) general jurisdiction over Lockheed Martin; or (2) specific jurisdiction Lockheed Martin. Mot. at 4–10. The Cochrans counter that the Court has general jurisdiction over Lockheed Martin because Lockheed Martin's predecessor was "a resident of California at the time of the tort that caused" Cochran's injury. Opp'n at 2, 6–7. The Cochrans further contend that the Court has specific jurisdiction over Lockheed Martin because Lockheed Martin placed the injury causing Radar System into the stream of commerce "with knowledge its products would be used on Navy ships ported" in California and engaged in additional conduct "availing itself of the benefits of California markets." *Id.* at 2, 7–9.

#### 1. The Court lacks general jurisdiction over Lockheed Martin.

Lockheed Martin alleges that the Court lacks general jurisdiction over Lockheed Martin because, at the time of the filing of this action, Lockheed Martin is neither incorporated in nor has its principal place of business in California. Mot. at 9; Bennett Decl. ¶¶ 2–3. In response, the Cochrans argue that Lockheed Martin's predecessor, Lockheed Aircraft, "was at home and domiciled in California throughout the time of [Cochran's] exposures to asbestos-containing materials." Opp'n at 5–6.

"A court may exercise general jurisdiction *only where* continuous corporate operations within a state [are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quotation marks omitted) (emphasis added) (citing *Int'l Shoe Co.*, 326 U.S. at 318). Thus, "[t]he standard for general jurisdiction is high; contacts with a state must 'approximate physical presence,'" such that the "defendant must not only step through the door, it must also [sit] down and [make] itself at home." *Id.* (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)); *see also Mavrix Photo*, 647 F.3d at 1224 ("To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their

'[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" (citing *Tuazon*, 433 F.3d at 1172)).

This calculus, however, cannot rely on a defendant's past domicile. *See* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, Calif. & 9th Cir. Editions § 3:94.3 (2022). Instead, as "general jurisdiction is not related to the events giving rise to the suit . . . the plaintiff [must] demonstrate the defendant's continuous and systematic general business contact with the forum *at the time the initial complaint was filed*." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (quotation marks omitted) (emphasis added).

With this guidance in mind, the Court finds that Lockheed Martin is not subject to general jurisdiction in California. The Cochrans attempt to argue that Lockheed Aircraft's presence in California from 1967 to 1975 is sufficient to establish the minimum contacts necessary to assert general jurisdiction. Opp'n at 5–6. Specifically, the Cochrans contend that Lockheed Aircraft's incorporation in Burbank, California during this period is sufficient to establish general jurisdiction because it domiciles the Lockheed Martin of 2021 in California. *Id.* The Cochrans cite to *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) to support this argument, urging this Court to adopt a "reasonableness" standard when evaluating whether general jurisdiction would be appropriate under the circumstance of the case. *See* Opp'n at 5–6 (citing *Metro. Life Ins. Co.*, 84 F.3d at 569). But while *Metropolitan Life Insurance Co.* does direct the district court to "examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances," this time period necessarily includes "*up to and including the date the suit was filed.*" 84 F.3d at 569–70 (emphasis added). Despite what the Cochrans argue, *Metropolitan Life Insurance Co.* specifically states that the time period *does not* include "the events giving rise to the suit." 84 F.3d at 568. *See* Opp'n at 6.

The Cochrans also fail to provide the Court with facts indicating that Lockheed Martin is currently domiciled in California. Indeed, it is undisputed that Maryland has been Lockheed Martin's jurisdictional home since 1995. *See* SAC ¶ 9; Mot. at 3; Reply at 2; Bennett Decl. ¶¶ 2–4.

Thus, it would be antithetical to principles of due process to subject Lockheed Martin to general jurisdiction in California due to the presence of a predecessor corporation 47 years in the past.[6]

Accordingly, the Court finds that Lockheed Martin is not subject to general jurisdiction in California.

### 2. The Court lacks specific jurisdiction over Lockheed Martin.

The Court next evaluates whether Lockheed Martin is subject to specific jurisdiction in this forum.

Lockheed Martin argues that the Court lacks specific jurisdiction over Lockheed Martin because it has no sufficient contacts with California. Mot. at 5–7. More specifically, Lockheed Martin maintains that the Cochrans have failed to satisfy the Ninth Circuit's three-prong specific jurisdiction test: (1) that the defendant purposefully avail themselves of the forum state; (2) that the claim arises out of the defendant's forum-related activities; and (3) that the exercise of personal jurisdiction comport with fair play and substantial justice. *Id.* The Cochrans, in response, proceed on the "stream of commerce" theory, arguing that Lockheed Martin's predecessors, in designing and manufacturing the System, placed the radar in the stream of commerce enabling Cochran to come into contact with the System in California between 1967 and 1975. Opp'n at 6–8.

Here, as the Cochrans bring claims for negligence and breach of express and implied warranties, the SAC sounds in both tort and contract. As such, both the purposeful availment and purposeful direction tests are at issue. *See Glob. Commodities Trading Grp.*, 972 F.3d at 1107 (citing *Picot*, 780 F.3d at 1212). However, as the tests hinge on the same question—"whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled

---

[6] In *Daimler AG v. Bauman*, the Supreme Court made clear that due process considerations prohibit the extension of general jurisdiction to "exorbitant" lengths. 571 U.S. 117, 139 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). For the Court to subject Lockheed Martin to general jurisdiction in California without any evidence of the entity engaging in "continuous and systematic general business contacts" in this forum would be such an exorbitant extension. *Mavrix Photo*, 647 F.3d at 1223 (citing *Helicopteros*, 466 U.S. at 416); *see also id.*, 647 F.3d at 1224 (holding that general jurisdiction can only be established by "continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities" (citing *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)).

into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"—the Court's analysis applies equally to both inquires. *Glob. Commodities Trading Grp.*, 972 F.3d at 1107 (quotation marks omitted).

1. <u>The Court considers the parties' supporting affidavits and exhibits.</u>

As an initial matter, the Court finds the SAC devoid of any specific allegations detailing how Lockheed Martin or the Predecessors directed their activities to California. Both parties, however, submit affidavits and exhibits to support their arguments. While courts may consider affidavits on a Rule 12(b)(2) motion to dismiss, courts may not "assume the truth of allegations in a pleading which are contradicted by affidavit." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). Where the parties have, as here, both submitted affidavits, "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *LNS Enters.*, 22 F.4th at 858. Accordingly, the Court considers the affidavits and supporting evidence. The Court construes all uncontroverted allegations made in affidavits in favor of the Cochrans. But as the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," it does not consider any controverted facts. *Mavrix Photo*, 647 F.3d at 1223 (quotation marks omitted).

    a. *The Cochrans have inverted their burden and have not adequately pleaded that Lockheed Martin, or any of its predecessors, purposefully availed themselves of California from 1967 to 1975.*

The parties do not directly address the first prong—whether Lockheed Martin, by and through the Predecessors, "purposefully avail[ed] [itself] of the forum state." *Picot*, 780 F.3d at 1211. Purposeful availment is typically defined as "actions taking place in the forum that invokes the benefits and protections of the laws in the forum." *Schwarzenegger*, 374 F.3d at 803.

However, the Cochrans appear to urge the Court to adopt the "stream of commerce" theory, which is typically analyzed under the first prong of the specific jurisdiction analysis. *See LNS Enters.*, 22 F.4th at 859–60; *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881–82 (2011) ("This Court has stated that a defendant's placing goods into the stream of commerce 'with the expectation that they

will be purchased by consumers in the forum State' may indicate purposeful availment." (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). But it is well-established that "[p]lacing a product into the stream of commerce—even if the defendant is aware that the stream of commerce may or will sweep the product into the forum state—does not convert the mere act of placing the product into the stream of commerce into an act of purposeful availment." *LNS Enters.*, 22 F.4th at 859–60 (quotation marks omitted) (citing *Holland Am. Line*, 485 F.3d at 459). "[S]omething more" is needed. *LNS Enters.*, 22 F.4th at 860 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 111 (1987)).

      The Cochrans argue that this prong is satisfied because the Predecessors, at some point during the relevant five-year period, "manufactured, designed[,] and sold the AN/SPS-40 radar system and sold that system to the United States Military." Opp'n at 7. In response, Lockheed Martin alleges that none of the activities related to the System—including design, manufacturing, or quality control—took place in California. *Id.* at 6–7; Jimenez Decl. ¶¶ 18–26; *see also* Jimenez Decl. ¶ 26 ("All the duties that Lockheed Electronics performed regarding the AN/SPS-40 radar system manuals occurred at Lockheed Electronics' facilities in New Jersey."). The Cochrans proffer no evidence explicitly refuting Lockheed Martin's assertions. Instead, the Cochrans' arguments hinge on alleged gaps in Lockheed Martin's allegations regarding the sale and shipment of AN/SPS 40 radars between 1967 and 1975. *See* Opp'n at 8 (citing Jimenez Decl. ¶¶ 20–26). Specifically, the Cochrans state that the Jimenez Declaration has a "gaping factual void" in that Jimenez asserts that he "has no information or knowledge that Lockheed Electronics ever shipping any AN/SPS-40 radar system components . . . to any location in California" and has "the same lack of information or knowledge regarding technical support or services regarding the radar systems in California." *Id.* The Opposition also highlights Lockheed Martin's alleged knowledge that the relevant "radar systems would be installed on navy ships ported at major U.S. naval ports in California." Opp'n at 8.

      The Court finds that the Cochrans have failed to show "something more." As a threshold matter, the Cochrans invert the burden on specific jurisdiction. It is the *plaintiff's* burden on a Rule 12(b)(2) motion to dismiss to meet the first two prongs of the test. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (The "plaintiff bears the burden on the first two prongs, but

once both are established, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." (quotation marks omitted)). Only after the plaintiff has met her burden may the Court look to the sufficiency of *the defendant's evidence* to determine whether specific jurisdiction is proper. *See Axiom Foods*, 874 F.3d at 1068–69 (noting that if the plaintiff establishes the first two prongs, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."); *see also LNS Enters.*, 22 F.4th at 859 (same) (citing *Axiom Foods*, 874 F.3d at 1064). The Cochrans' arguments regarding Lockheed Martin's failure to provide sufficient evidence are therefore improper and thus rejected by the Court.

As the Cochrans have failed to meet their burden, the Court finds that the Cochrans have failed to establish that Lockheed Martin is subject to specific jurisdiction in California.

> b. *The facts do not indicate that either Lockheed Martin or the Predecessors purposefully availed themselves of California.*

Next, the Court finds that even if the Cochrans had not inverted their burden, the evidence they have provided is insufficient. Lockheed Martin directs the Court to two recent cases relating to the "something more" standard: *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021), and *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022). Reply at 8.

In *LNS Enterprises*, the Ninth Circuit clarified the two poles of "something more": at one end sits *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), where the non-resident defendant was found to not be subject to specific jurisdiction because it was neither incorporated in nor had its principal place of business in the forum state. *LNS Enters.*, 22 F.4th at 860. The defendant similarly "did not solicit business through salespersons or through advertising reasonably calculated to reach the State" and where the corporate defendants "carried on no activity whatsoever." *Id.* At the other end is *Ford Motor Co. v. Montana Eighth District*, 141 S. Ct. 1017 (2021), where the defendant was subject to specific jurisdiction due, in part, to the defendant's "staggering number of contacts" with the forum state. *LNS Enters.*, 22 F.4th at 860–61. The Ninth Circuit also highlighted the facts of *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 (1987), where the Supreme Court found that the defendant having "design[ed] the product for the

market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," is sufficient evidence of "something more" for the purposes of specific jurisdiction. *LNS Enters.*, 22 F.4th at 861 (discussing *Asahi Metal Indus.*, 480 U.S. at 107).

The Court finds that the Cochrans' allegations fall more in line with *World-Wide Volkswagen*. While the Cochrans attempt to argue that the Predecessors' presence in California and general sale of the System are sufficient to establish specific jurisdiction, the Cochrans fail to provide any allegations stating that Lockheed Martin solicited business in California, specifically targeted California, or even had direct knowledge that the Radar System would be shipped to California from 1967 to 1975. The facts indicate that Lockheed Martin's predecessor, Lockheed Electronics, fully conducted all business activities in New Jersey and "never maintained business operations, activities, or facilities in the State of California," Jimenez Decl. ¶¶ 11, 12. And while it appears that Lockheed Martin may have derived monetary benefit from California, it is not apparent that Lockheed Martin voluntarily sought out such a benefit.

The Ninth Circuit has found evidence of "voluntariness" where a nonresident corporation sustained a multi-year business relationship which required that contract payments be made in California, relevant inspections and associated certificates were issued in California, and the corporation acknowledged its obligations to make payments in California. *See Glob. Commodities Trading Grp.*, 972 F.3d at 1108. There is no similar evidence here. All relevant contracts were made with the Military, not with a California-based entity. Jimenez Decl. ¶¶ 14–16. Any and all System-related advertising was "specifically directed to, and performed for, the United States Military for the military's use aboard Naval vessels only." *Id.* ¶ 21. All activities associated with the "design, development, manufacture, assembly, production, quality control testing, sale, and delivery" of the System were performed in New Jersey. *Id.* ¶ 17. There are no allegations indicating that Lockheed Martin or the Predecessors ever shipped the System or and components associated with the System to California. *Id.* ¶ 20. In fact, Lockheed Aircraft—the only Lockheed Martin predecessor known to have been domiciled in California—is alleged to have only dealt in the "manufacture[], assembl[y],

and produc[tion] of *aircraft* at their California facilities," not the shipboard radar systems like the one at issue in this action. Jimenez Decl. ¶ 18 (emphasis added). The allegations imply that neither Lockheed Martin, nor any of its predecessors, took part in directing the System to California and, thus, have nothing more than an attenuated link to Cochran's alleged asbestos exposure. *C.f. Nicastro*, 564 U.S. at 877 (finding a British scrap metal manufacturer not subject to specific jurisdiction in New Jersey because it "at no time . . . advertised in, sent goods to, or in any relevant sense targeted the State.").

However, at the October 6 Hearing, the Cochrans, citing no law, advanced a new theory: that Lockheed Martin, through the Predecessors, purposefully directed its activities to California by providing the Navy with updated System manuals, System replacement parts, and other hardware, all of which were sent to California. Again, the Court does not find this argument availing. Not only is the Court not required to consider arguments first raised at the hearing, *see, e.g.*, *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (deeming waived contentions raised for the first time at oral argument), but the Cochrans' argument does not establish purposeful direction. As already discussed, purposeful direction requires that "defendants have *voluntarily* derived some benefit from their interstate activities." *Glob. Commodities Trading Grp.*, 972 F.3d at 1107 (emphasis added). This newly raised argument, like the arguments raised in the Opposition, does not establish that Lockheed Martin voluntarily derived any benefit from California. Indeed, for an action to be voluntary, it must have been done "by design or intention." *Voluntary*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Voluntary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/voluntariness (last accessed Oct. 11, 2022) (defining voluntary as "proceeding from the will or from one's own choice or consent"); *id*. (also defining voluntary as "unconstrained by interference"). The Cochrans' line of reasoning fails to show that Lockheed Martin designed to or otherwise intended to target the California market. Following the Cochrans' argument to its logical end, all that is shown is what Lockheed Martin established in its briefs and at oral argument—that Lockheed Electronics entered a contract with the Military, provided the System to the Military, the Military shipped the System to various Naval vessels throughout the United States, and, when needed, Lockheed Electronics may have provided the *Military* with necessary

repair parts and manuals which were then sent to various vessels. *See, e.g.*, Jimenez Decl. ¶ 21. At no point is it clear that Lockheed Martin, by and through the Predecessors, intended to avail itself of the benefits of doing business in the California.

In sum, the only connection that Lockheed Martin, by and through the Radar System, has to California is not due to Lockheed Martin's individual or specific activities, but is instead a result of the Predecessors' interactions with the United States Military. Any California-derived benefit appears fortuitous. *See Glob. Commodities Trading Grp.*, 972 F.3d at 1107.

This prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. *Mavrix Photo*, 647 F.3d at 1228. Accordingly, the Court need not repeat its analysis and consider whether the Cochrans have adequately pleaded that Lockheed Martin purposefully directed itself towards California.

As the Cochrans have failed to meet their burden under the first and second specific jurisdiction prongs, the Court DECLINES to find Lockheed Martin subject to specific jurisdiction in California.

### 3. The Cochrans' request for jurisdictional discovery is denied.

The Cochrans request leave to conduct jurisdictional discovery if the Court declines to find Lockheed Martin subject to personal jurisdiction. Opp'n at 9. At no point in their briefing do the Cochrans explicitly state the additional information they seek to obtain regarding Lockheed Martin's contacts with California. At the October 6 Hearing, however, the Cochrans clarified the scope of their proposed jurisdictional discovery, arguing that they seek information regarding Lockheed Martin's issuance of System maintenance materials, such as System technical manuals and spare and replacement parts that may have been delivered to California. These materials, they argue, will shed light on the extent of Lockheed Martin's purposeful interactions with California. Lockheed Martin, in response, argued that the Cochrans had ample opportunity to request such information during discovery and failed to do so.

While the Ninth Circuit adopts a liberal standard with respect to the granting of jurisdictional discovery, noting that it "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," such

permission is not unlimited. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal quotation marks omitted) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). District courts generally only authorize jurisdictional discovery when "pertinent facts bearing on the question of jurisdiction are controverted" or if "a more satisfactory showing of the facts is necessary." *LNS Enters.*, 22 F.4th at 864. (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)). A "hunch" that "discovery might yield jurisdictionally relevant facts" is insufficient. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

The Court finds jurisdictional discovery inappropriate. The arguments presented in the Opposition do not specify what information the Cochrans seek to gain through jurisdictional discovery or how any additional information may be helpful to the Court. *See, e.g.*, *id.* (finding the district court's denial of jurisdictional discovery appropriate where the complaint failed to allege how the sought after information would be helpful to the court's jurisdictional analysis); *Butcher's Union Local No. 498*, 788 F.2d at 540 (similarly denying to grant jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction."). Instead, the Cochrans only justify this request by stating that "the Jiminez [sic] declaration on which Lockheed Martin relies in its request for dismissal is self-evidently lacking in personal knowledge and foundation, and demonstrates a complete lack of evidentiary foundation for the instant motion." Opp'n at 9.

As already discussed, it is the Cochrans' initial burden to establish personal jurisdiction, *not* that of Lockheed Martin. Further, the Cochrans' request for jurisdictional discovery falls squarely outside of what is deemed appropriate by the Ninth Circuit. Indeed, requests for jurisdictional discovery must be denied "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

/ / /

/ / /

Turning next to the additional arguments presented at the October 6 Hearing,[7] as discussed *supra* Section III.2.b, the Court does not find the Cochrans' sought after evidence availing on a 12(b)(2) motion to dismiss.[8] But even if such evidence were convincing, the Court's foregoing analysis indicates that Lockheed Martin is not subject to specific jurisdiction in this forum. The Ninth Circuit has held that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498*, 788 F.2d at 540; *see also Boschetto*, 539 F.3d at 1020 (jurisdictional discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."); *id.* (holding that a party moving for jurisdictional discovery must still indicate that it is proceeding on more than a "hunch" that such discovery will yield relevant information.). This is not the case here. Applying legal precedent to the present facts, it is clear that Lockheed Martin is not subject to personal jurisdiction in this forum. *See Laub*, 342 F.3d at 1093 ("[A] refusal to grant discovery to establish jurisdiction is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction. . . .") (quotation marks omitted).

Moreover, as Lockheed Martin pointed out at the October 6 Hearing, the information now sought by the Cochrans could have been requested during general discovery. The Cochrans conceded that they have yet to request information regarding technical manuals and spare and replacement parts sent to by the Predecessors to California and request it for the first time at this juncture. But such a request is not appropriate on jurisdictional discovery. For the Cochrans to delay seeking discovery into this question until jurisdictional discovery—in the face of the fact that Lockheed Electronics never directly sent the System to California—reduces the Cochrans' request to operating on a "hunch" rather than seeking a more satisfactory showing of information where there

---

[7] The Court again reminds the parties that the Court is not required to consider arguments first raised at oral argument. *See, e.g.*, *Johnson*, 614 F.3d at 1069 (9th Cir. 2010) (deeming waived contentions raised for the first time at oral argument).

[8] Moreover, viewing the Opposition as a whole, it appears that the Cochrans will likely employ jurisdictional discovery to "confirm the extent of [Lockheed Martin's] sales, advertisements, and affiliations" in California. *LNS Enters.*, 22 F.4th at 864. Such a use, however, has been rejected by the Ninth Circuit. *Id.*

are controverted facts. *See LNS Enters.*, 22 F.4th at 864; *Butcher's Union Local No. 498*, 788 F.2d at 540.

As such, the Cochrans' request—based on Lockheed Martin's attenuated connection to California through its predecessors and founded on the allegedly "gaping factual void" in Lockheed Martin's supporting affidavits—is barred.

Accordingly, the Court DENIES the Cochrans' request for jurisdictional discovery.

## **CONCLUSION**

In light of the foregoing, the Court hereby GRANTS the Request for Judicial Notice. The Court further GRANTS Lockheed Martin's Motion to Dismiss. As this Motion proceeds on an incurable jurisdictional defect, the Court finds amendment futile. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (listing "futility" among reasons to deny leave to amend). Accordingly, the Motion is GRANTED WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: October 13, 2022

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge